**IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION**

**CIVIL NO. 1:06CV360
(1:99CR52)**

| | |
|---|---|
| **LONNIE EDGAR PEELER,** ) | |
| ) | |
| **Petitioner,** ) | |
| ) | |
| **Vs.** ) | **MEMORANDUM** |
| ) | **AND ORDER** |
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| **Respondent.** ) | |
| _____) | |

**THIS MATTER** is before the Court on the Petitioner's motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255. No response is necessary from the Government.

## I. STANDARD OF REVIEW

A prisoner in federal custody may attack his conviction and sentence on the grounds that it is in violation of the Constitution or United States law, was imposed without jurisdiction, exceeds the maximum penalty, or is otherwise subject to collateral attack. 28 U.S.C. § 2255. However,

2

> [i]f it plainly appears from the face of the motion and any
> annexed exhibits and the prior proceedings in the case that the
> movant is not entitled to relief in the district court, the judge
> shall make an order for its summary dismissal and cause the
> movant to be notified.

**Rule 4, Rules Governing Section 2255 Proceedings for the United States District Courts.**  The Court, having conducted a thorough review of the record of the criminal proceedings, the Petitioner's § 2255 motion and supporting memorandum of law, denies the relief sought and enters summary dismissal for the reasons stated herein.

## II. PROCEDURAL HISTORY

On June 9, 1999, the Petitioner and 21 co-Defendants were charged with conspiracy to possess with intent to distribute and distribution of a quantity of methamphetamine in violation of 21 U.S.C. §§ 846 and 841(a)(1).  **Bill of Indictment, filed June 9, 1999.**  The Government also filed an Information pursuant to 21 U.S.C. § 841(b) contending the amount of methamphetamine involved in the conspiracy.  **Information pursuant to 21 U.S.C. 841(b), filed June 9, 1999.**

On August 20, 1999, the Petitioner entered into a plea agreement with the Government wherein he agreed to voluntarily plead guilty to Count

3

One of the indictment and admitted "to being in fact guilty as charged" in the indictment. **Plea Agreement, filed August 20, 1999, at 1.** He was advised that the statutory maximum sentence for the offense was not less than 10 years and not more than life imprisonment. *Id.* He was also advised that the final sentence imposed would be determined by the Court and any estimate of the length of imprisonment to be imposed was not binding upon the Court. *Id.* The parties agreed that the amount of methamphetamine reasonably foreseeable to the Petitioner was at least 1.5 kilograms but less than 5 kilograms; that his adjusted gross offense level would be at least 34; that a two-level reduction and a possibility of a three-level reduction would be recommended provided the Petitioner acknowledged all relevant criminal conduct and timely provided such information to the Government; that the Petitioner's criminal history could affect the ultimate Guideline determination; and that the Court would make the final decision regarding the Guideline calculations. *Id.* **at 1-2.** The Petitioner waived all rights associated with a jury trial as well as his right to contest his conviction or sentence in any direct appeal or other post-conviction proceeding, such as a § 2255 motion, except on the grounds of prosecutorial misconduct or ineffective assistance of counsel. *Id.* **at 4.** He

4

further agreed that the Government, in its sole discretion, would determine whether any assistance he provided would be deemed substantial assistance and would qualify for a motion for downward departure. *Id.* **at 5-6.** The Petitioner and his attorney signed the plea agreement on August 11 and 12, 1999.

On August 24, 1999, the Petitioner and his attorney appeared before the Magistrate Judge for a Rule 11 hearing for entry of his plea.  The Petitioner was placed under oath and responded as follows: that he was not under the influence of any medications, liquors or drugs; that he knew and understood what he was doing; that he understood the elements of the offense with which he was charged and to which he was pleading guilty and the fact that the mandatory minimum sentence was 10 years imprisonment, and the maximum punishment could be life imprisonment; that he would be sentenced pursuant to the Guidelines; that he waived his rights to a jury trial and to appeal his sentence and conviction either on direct appeal or a post-conviction proceeding except on the grounds of prosecutorial misconduct or ineffective assistance of counsel; that he had discussed the Guidelines with his attorney and understood how they might be applied in his case; that he understood and agreed with the terms of the

5

plea agreement including the limitations on his right to file a post-conviction proceeding; and he wanted the Court to accept his guilty plea. **See generally, Rule 11 Inquiry and Order of Acceptance of Plea, filed August 24, 1999.** The Petitioner and his attorney reviewed the Petitioner's answers to the questions on the Rule 11 form as recorded by the Magistrate Judge and then signed the Rule 11 form certifying that the answers to the "questions propounded by the court, as recorded above and on the record, are true and accurate to the best of their knowledge." *Id.* at 8. The Magistrate Judge then found that the Petitioner's plea was knowingly and voluntarily entered and accepted the plea. *Id.* at 9.

The Petitioner's presentence report was issued on January 25, 2000, and concluded that the Petitioner's total offense level was 36, resulting in a criminal history category III, and a Guideline range of imprisonment of 235 to 293 months. **Presentence Investigation Report, prepared January 25, 2000, revised July 12, 2004, at 7, 10; Sentencing Recommendation, at 1.** The Petitioner and his attorney were notified to appear for a sentencing hearing on July 6, 2000; the Petitioner failed to appear as directed and an arrest warrant was issued. In preparation for the sentencing and before it was known the Petitioner had absconded, the

6

Government filed its motion for a downward departure reflecting Petitioner's substantial assistance and recommended the Petitioner's total offense level be reduced to 24, his criminal history category to remain at III, and a sentence of 63 months imprisonment be imposed. **Motion for a Downward Departure, filed July 6, 2000, at 3-4.** Because the Petitioner failed to appear for sentencing and thus violated the terms of the plea agreement and the conditions of his pretrial release, the Government was allowed to withdraw its motion for downward departure. *See* **Plea Agreement, ¶'s 10, 18.** Therefore, the Guideline range of 235 to 293 months imprisonment outlined in the presentence report remained, subject to the Court's final approval.

The Petitioner was not arrested until some four years later on June 24, 2004. The presentence report was revised; and on August 19, 2004, the undersigned sentenced the Petitioner to a term of 235 months imprisonment. The Petitioner filed a timely notice of appeal. **Judgment in a Criminal Case, filed August 30, 2004; Petitioner's Notice of Appeal, filed August 30, 2004.** The Fourth Circuit affirmed the Petitioner's conviction and sentence on November 3, 2005. ***United States v. Peeler*, 148 F. App'x 184 (4th Cir. 2005).** The appellate court determined that the

7

Petitioner had "waived the right to proceed with each of his claims on appeal, except his claim of ineffective assistance of counsel" and that he could raise those claims under 28 U.S.C. § 2255. *Id.*

## III. DISCUSSION

First, the Petitioner contends that he did not appear as directed for the sentencing hearing on July 6, 2000, due to "pain, poor health, the side effects of the medication (and an extraordinary fear of dying in prison)." **Petitioner's Memorandum of Law, at 2.** He also states that for the next four years he was in constant pain and required frequent hospitalizations in several area hospitals. *Id.* However, Petitioner fails to state whether or not he notified his attorney, the Court, his probation officer, or any other Government official about his health condition or repeated hospitalizations or attempted to do so during this four year period.

Petitioner next contends that his counsel was ineffective for failing to object to the inclusion of the misdemeanor forgery conviction in the calculation of his criminal history. *Id.* **at 3;** *see also*, **Presentence Report, ¶ 34.** However, the Petitioner further points out that his attorney had been

8

shown the actual judgment of conviction and subsequently withdrew the

objection.

> **MR. STEWART:** The only really substantive objection was as to paragraph 37[1], which had to do with misdemeanor convictions of some time ago. . . .  I conferred with the probation officer shortly before [the last] hearing, and they showed me the actual judgments in the record, so as far as I'm concerned, . . . our objections [are] moot.

**Transcript of Sentencing Hearing, filed November 18, 2004, at 3-4**

**(footnote added).**   Had counsel persisted in the objection after review of

the actual judgment of conviction, he may have exposed himself to the

possibility of being sanctioned for the frivolous and intentional

misrepresentation of a valid court record.

The Petitioner is also incorrect in his assertion that the "Prosecution

did not use the alleged two misdemeanor convictions in their calculation of

the Petitioner's Guideline Range, calculating it to be level 24," and that the

Government listed his criminal history category as I, not III.  **Memorandum**

**of Law, *supra*, at 3-4, 6.**  The presentence report reflects the correct

offense level based on the Petitioner's criminal history; the offense level of

---

[1] The correct paragraph number of the presentence report is 34.

9

24 and a Criminal History Category III was the Government's recommendation proffered in their motion for downward departure to reflect the Petitioner's degree of substantial assistance. **Motion for Downward Departure, *supra*, at 3.** Because the Petitioner failed to appear at the original sentencing hearing (thereby violating the terms of his bond and plea agreement) and due to his four-year absence, the Government withdrew this motion. Petitioner's own decision to abscond cost him the right to have his good deeds outlined in the motion for downward departure considered by the Court.

Petitioner next contends that although his attorney "raise[d] Petitioner['s] health issue during sentencing . . . he did not offer any argument regarding its effect . . . which prevented the Petitioner from appearing for sentencing on July 6, 2000." **Memorandum of Law, *supra*, at 5.** As shown by the transcript, this allegation is totally without merit. In addressing the Court prior to the imposition of sentence, Petitioner's attorney stated:

> My client was on pretrial release, had done well, was involved in a drug intervention program at the time. As you can see here today, Mr. Peeler suffers from some pretty serious health concerns. He was equally in poor health condition four or five years ago. . . . He has been disabled . . . since 1998. Prior to that time, he has always been gainfully employed, always

10

supported his dependents. . . . Since 1998, Lonnie has had
one health problem just coupled with another on top of another.
He's had a series of problems. When I was prepared to appear
before this Court in July of 2000, he had just come out of triple-
bypass heart surgery. Before that period of time, he had been
treated for chronic obstructive lung disease. Over the last four
years he's been out, he's had four separate surgical
interventions in Shelby, all related to his heart and circulatory
problems. So, although he is only 64 years old, he has had a
lot of health problems. . . . [A]lthough Mr. Peeler didn't appear
before this Court four years ago, in the last four years, he has
remained out of trouble. He has had a lot more health
concerns over the last four years than he did even before then.
As you can see today, he has been actually housed in
Columbia [South Carolina], in the medical facility down there,
just because we couldn't meet his medical needs up here. I
hope when we finish today, the Marshal Service will make
whatever arrangements to return him there until such time that
he's designated. He is in that much need of medical care and
day-to-day just following and monitoring. He has not had any
other charges, problems with the law for the last four years. He
has not stayed in drug treatment, but he was in that up until the
time that he did not show in 2000. . . . I would just ask Your
Honor to take into consideration my client's age and the
infirmities that he suffers from[.]

**Sentencing Transcript,** *supra,* **at 5-7.** As a result of counsel's detailed

review of Petitioner's serious health problems and other relevant points

brought to the Court's attention, the Court, in its pre-*Brooker*[2] judgment,

sentenced the Petitioner at the bottom of the Guideline range.

---

[2] ***United States v. Booker,*** **543 U.S. 220 (2005).**

11

Petitioner finally alleges that his attorney did not argue the fact that the Petitioner had complied with his plea agreement and provided substantial assistance to the Government. This argument, too, is without merit. Counsel specifically asked the Court to consider sentencing the Petitioner as outlined in the Government's motion for downward departure. **Id. at 7-8 ("I would ask Your Honor to consider sentencing him in whatever range you think is appropriate, taking into consideration the motion for downward departure the government had asked for.").**

In considering the Petitioner's claims of ineffective assistance of counsel,

> [f]irst, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

**Strickland v. Washington, 466 U.S. 668, 686 (1984).** Unless a defendant makes both showings, his claim of ineffective assistance of counsel must fail. **Id.** Thus, a defendant must show that counsel's performance fell below objective standards of reasonableness, and, that but for counsel's conduct, there was a reasonable probability the result would have been

12

different.  *Id.*, at 688; *Hill v. Lockhart*, 474 U.S. 52 (1985); *Fields v. Attorney Gen.*, 956 F.2d 1290 (4th Cir. 1992) (In order to obtain relief from a guilty plea on the basis of ineffective assistance of counsel, a defendant must show both that counsel was incompetent and but for that incompetence, he would not have plead guilty).  If the defendant fails to make the first showing, there is no need to consider the second. *Strickland, supra.*

Because the Petitioner has failed to show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," the second prong of *Strickland* need not be reached.

## IV.  ORDER

**IT IS, THEREFORE, ORDERED** that the Petitioner's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 is **DENIED**; a Judgment dismissing this action is filed herewith.

13

Signed: April 12, 2007

Lacy H. Thornburg
United States District Judge